U N I T E D   S T A T E S   D I S T R I C T   C O U R T
D I S T R I C T   O F   N E W   J E R S E Y

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ   07101-0419
(973) 645-6340



**WILLIAM J. MARTINI
JUDGE**

# LETTER OPINION

January 13, 2010

Moses Delbridge
1016 Broadway
Bayonne, NJ 07002
    *Pro Se Plaintiff*

Kelly Lynn Bannister
Buchanan, Ingersoll & Rooney, PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2255
    *Attorneys for Defendants*

    Re:   *Delbridge v. Acme Food Corp. and Robert George*
              <u>Civil Action No. 08-4821</u>

Dear Litigants:

      This matter comes before the Court on Defendants' Motion for Summary Judgment seeking dismissal of the Amended Complaint, pursuant to Fed. R. Civ. P. 56.   There was no oral argument.   Fed. R. Civ. P. 78.   For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED** and the Amended Complaint is dismissed.

**I.    BACKGROUND**

Defendant Acme Food Corp. ("Acme") operates retail grocery stores in several U.S. states including New Jersey.  (Declaration of Jennifer Schwarz ("Schwarz Decl.") ¶ 2). Defendant Robert George ("George") is Acme's Manager of Loss Prevention. (Declaration of Joseph Mastalski ("Mastalski Decl." ¶ 2)).  *Pro se* plaintiff Moses Delbridge ("Plaintiff" or "Delbridge"), who is African-American and was 18 years old at the start of this litigation, was employed at Acme's grocery store in Jersey City, New Jersey, from July 2004 until he was terminated in late September 2006.  He was employed first as a clerk, performing bagging and checking duties, and was eventually promoted to a customer service representative position.  (Schwarz Decl. Exs. F-G; Declaration of Carl Luthke ("Luthke Decl.") ¶ 3; Delbridge Dep. Tr. 14:10-24, 26:25-29:5).  During the entirety of his employment with Acme, Plaintiff was a member of the United Food and Commercial Workers Local 1245 (the "Union").  (Schwarz Decl. ¶ 4; Delbridge Dep. Tr. 25:2-19).

Acme maintains an "Honesty and Accuracy" policy, to which all employees are subject.  (Luthke Decl. ¶ 4, Ex. A., at D00148).  The policy prohibits coupon fraud and conspiring with any other employee to commit coupon fraud or otherwise violate company policy.  Coupon fraud includes using the same coupon more than once.  (Luthke Decl. ¶ 4, Ex. A., at D00148).  Plaintiff was aware of the policy and received training in which he learned that it was improper to use a coupon more than once.  (Delbridge Dep. Tr. 21:13-21, 23:2-24:5, 60:25-61:3).

In September 2006, Acme employees initiated an investigation into coupon fraud at the Jersey City store.  (Mastalski Decl. ¶¶ 4-5).  On September 26, 2006, Defendant George viewed surveillance tapes in connection with the investigation.  A tape from September 3, 2006 showed Plaintiff engaging in several register transactions at a cash register assigned to employee Ashley Thomas ("Thomas").  (Mastalski Decl. ¶ 5; Delbridge Dep. Tr. 38:9-14, 39:17-21).  Recording technology used by Acme and installed on all registers confirms that the employee card used for these transactions belonged to Plaintiff and that the same coupon was used more than once for these transactions, in violation of company policy.  (Delbridge Dep. Tr. 35:18-36:6; Mastalski Decl. ¶6, Exs. A-D).  Plaintiff concedes that his employee card was used for these transactions, and that it was used with his knowledge and consent.  (Delbridge Dep. Tr. 38:3-8, 39:13-40:4, 44:19-45:4.)  However, Plaintiff asserts that it was Thomas who committed the coupon fraud, without his knowledge.  (Pl. Opp. Br. at 21).  Indeed, he argues that the surveillance tape shows that he was standing next to Thomas and her register while she used his card, but that he was staring out the window and not paying attention to Thomas or what she was doing with his card at her register.  (*Id.*).  The tape was not provided during discovery and is not available.  Defendants assert that it was not preserved due to a technological glitch; Plaintiff alleges that Defendants deliberately destroyed it because it vindicated Plaintiff.  (Pl. Opp. Br. at 25).

After viewing the tapes, George interviewed Plaintiff with respect to the September 3 transactions.  Although Plaintiff alleges that he requested to have a union representative attend his interview, no representative was made available or provided to him.  (Delbridge Dep. Tr. 41:13-42:3).  During the interview, Plaintiff was shown the surveillance video.

2

(Delbridge Dep. Tr. 36:11-17). Plaintiff also wrote out a statement acknowledging responsibility for the misuse of the coupons and signed a promissory note agreeing to repay $14.00 to the store. (Delbridge Dep. Tr. 40:5-41:2, 64:4-17; Mastalski Decl. ¶ 11, Ex. G). Plaintiff now states that he was coerced into writing the statement and that George doctored the date on promissory note. (Pl. Opp. Br. at 12, 23-24). He does not convincingly explain how the alleged altering of the date furthered the coupon fraud allegations against him. After the interview, Plaintiff was suspended. (Delbridge Dep. Tr. 40:25-41:2).

The results of the investigation were reviewed by Joseph Mastalski and Carl Luthke ("Luthke"), Acme's Associate Relations Manager. (Mastalski Decl. ¶ 12, Luthke Decl. ¶ 6). Based upon the review, Luthke made the decision to terminate Plaintiff. (Luthke Decl. ¶¶ 8-9). Additional employees who were also allegedly involved in the coupon fraud and policy violation were terminated at the same time. (Delbridge Decl. 48:19-49:2; Luthke Decl. ¶ 12; Schwarz Decl. ¶ 10, Ex. E). These additional terminated employees had previously self-identified themselves in personnel documents as black, white, and Hispanic. (Schwarz Decl. ¶ 12, Ex. E; Luthke Decl. ¶ 10).

After his involuntary termination, Plaintiff filed a grievance with the Union. (Delbridge Dep. Tr. 68:24-69:1). On April 20, 2007, a grievance meeting was held and attended by Plaintiff, Union officials, George, and other Acme employees. (Delbridge Dep. Tr. 70:14-71:10; Luthke Decl. ¶ 14, Ex. E). The grievance was denied. (Delbridge Dep. Tr. 70:14-71:10; Luthke Decl. ¶ 14, Ex. E). The Union then appealed the denial of the grievance to arbitration. The arbitration hearing took place on April 22, 2008. (Delbridge Dep. Tr. 77:25-78:22; Declaration of Kelly L. Bannister ("Bannister Declaration") Ex. E). The arbitrator subsequently issued an opinion, finding that Plaintiff was not credible and that there existed just cause to terminate Plaintiff. (Delbridge Dep. Tr. 104:25-105:16; Bannister Decl. Ex. E).

On August 6, 2008, Plaintiff filed a Complaint against Acme and George in New Jersey Superior Court, Hudson County. (Docket Entry No. 1). Defendants removed the case to federal court. (Docket Entry No. 1). Defendant George filed a motion to dismiss in October 2008, which was granted in part, but Plaintiff was given the opportunity to file an amended complaint. (Docket Entry No. 18). Plaintiff filed the Amended Complaint on January 17, 2009. (Docket Entry No. 21). The Amended Complaint does not appear to contain some of the allegations from the original complaint that were not dismissed, so given Plaintiff's *pro se* status, the Court will consider the Amended Complaint to incorporate the portions of the first Complaint that were not dismissed.

Plaintiff's Amended Complaint alleges that Acme terminated his employment, not because of the coupon fraud, but because Plaintiff is black and Acme wanted to terminate as many black employees as possible before the statutory minimum wage increased in October 2006. (Amended Complaint ¶¶ 3-4). Plaintiff alleges that Defendants violated his rights pursuant to *NLRB v. Weingarten*, 420 U.S. 251 (1974) and the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, that he was wrongfully terminated, that he was discriminated against on the basis of his race in violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 *et seq*. ("NJLAD"), and Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and that the arbitration decision upholding his termination should be vacated. Presently before the Court is Defendants' Motion for Summary Judgment or, in the alternative, for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

## II. ANALYSIS
### A. Standard of Review

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *See Celotex Corp.*, 477 U.S. at 323. A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." *Id.* at 325. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

### B. Plaintiff's Claim Pursuant to *NLRB v. Weingarten*

Plaintiff alleges that Defendants violated his "civil rights pursuant to the *Weingarten* rights." The Supreme Court's decision in *NLRB v. Weingarten*, 420 U.S. 251 (1974), entitles employees who are union members to union representation during investigatory interviews. *NLRB v. Weingarten*, 420 U.S. 251. However, it is well settled that the National Labor Relations Board ("NLRB") has exclusive jurisdiction over all actions pertaining to alleged unfair labor practices. *See Voilas v. Gen Motors Corp.*, 170 F.3d 367, 378 (3d Cir. 1999) (finding that causes of action related to prohibited and unfair labor practices are preempted by the NLRB's exclusive jurisdiction). Therefore, this claim is preempted and not properly before this Court. It must be dismissed as a matter of law.

### C. Plaintiff's Constitutional Claims

Plaintiff next alleges that Defendants' conduct violated his civil rights with respect to the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. However, to state a valid claim for damages pursuant to the Fifth and Fourteenth Amendments, the alleged misconduct must have been committed by a party acting under color of state law.

*See Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (stating that the "Fourteenth Amendment… applies to acts of the states, not to acts of private persons or entities"); *see also Balazinski v. Webster Lines*, 2009 WL 799285, *3 (finding that there is no cause of action for alleged violations of the Fifth or Fourteenth Amendments committed by private actors, "no matter how discriminatory or wrongful" the conduct). Similarly, claims brought under the Fourth Amendment are not sustainable where the alleged violator is not a state actor. *See Jevic v. Coca Cola Bottling Co. of N.Y., Inc*. (finding that the Fourth Amendment only covers the conduct of state actors). Simply stated, there is no cause of action for alleged violations of these Amendments by private actors.

Here, Defendant Acme is an operator of retail grocery stores and Defendant George is Acme's employee. Plaintiff has made no allegations that either Acme or George are state actors or that they engaged in any of the alleged misconduct while acting under color of state law. Nor is there any record evidence to this effect. Therefore, these claims must be dismissed as a matter of law.

### D.   Plaintiff's Wrongful Termination Claim

Plaintiff alleges that he was wrongfully terminated on the basis of his race and because Defendant Acme wanted to discharge black employees before the minimum wage increased in October 2006. This claim therefore appears to allege wrongful discharge in violation of public policy. However, New Jersey courts have routinely held that common law claims for wrongful discharge in violation of public policy are preempted when a statutory remedy exists under the NJLAD. *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 567 (D.N.J. 2000). Therefore, Plaintiff's wrongful termination claims based on race must be asserted exclusively pursuant to the NJLAD. The duplicative common law claim must be dismissed.

### E.   Plaintiff's Statutory Race Discrimination Claims (NJLAD and Title VII)

Plaintiff alleges race discrimination under both Title VII and the NJLAD. Both claims can be addressed together, as the standard framework for analyzing such claims is the same under both the federal and the state statute. *Hood v. Pfizer, Inc*., 2009 WL 1019993, *2 (3d Cir.); *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447 (2005).

In order for Plaintiff to establish a prima facie claim of racial discrimination, he must demonstrate that (1) he is a member of a protected group, (2) he was reasonably performing his job, (3) he suffered an adverse employment action such as termination, and (4) defendant employer sought someone else to perform his job. *See Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410-411(3d Cir. 1999); *Zive,* 182 N.J. at 450. After the plaintiff successfully demonstrates a prima facie case, the burden shifts to the defendant employer to articulate a "legitimate, non-discriminatory reason" for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000). If the defendant employer meets this burden, the plaintiff must then demonstrate by a preponderance of the evidence that the legitimate reasons offered by the defendants are mere pretext for discrimination.

*McDonnell Douglas*, 411 U.S. at 804-805; *Buchanan v. Pennsylvania*, 47 Fed. Appx. 117, 118 (3d Cir. 2002).

Here, Plaintiff may well have established a prima facie case of racial discrimination. However, establishing a prima facie case is not difficult, and in this situation has little bearing on the ultimate disposition of Plaintiff's claims. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 983 F.2d 509, 523 (3d Cir.1993) (finding that because "the prima facie case is easily made out, it is rarely the focus of the ultimate disagreement"). Defendants have articulated a legitimate and non-discriminatory reason for the termination, namely Plaintiff's violation of Acme's honesty policy with respect to coupon fraud. Plaintiff has not provided any evidence showing that the coupon fraud accusations were a mere pretext for discharging him based upon racial animus. Moreover, of the other employees fired for coupon fraud, at least one was Hispanic and at least one was white. In addition, of the employees hired to replace Plaintiff and the others fired for coupon fraud, at least some were black. (Schwarz Decl. ¶ 9, Ex. E.)

In his opposition brief, Plaintiff makes much of his allegations that the coupon fraud investigation and subsequent investigatory interview process were not conducted in an entirely thorough or organized manner. Specifically, in support of his claim of racial discrimination, he alleges that Defendants destroyed the videotape that would have vindicated him, improperly denied his request to have union representation during his interview, and forced him to write a statement with which he did not agree. While these allegations, if substantiated, may be regrettable or indicative of poor management on Acme's part, Plaintiff provides no evidence to support them.

More importantly, even if these allegations were true, they are irrelevant. The Third Circuit has routinely held that "pretext is not shown by evidence that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). To overcome Defendants' proffered legitimate and non-discriminatory reason for the termination, Plaintiff would have to demonstrate not only that the reason was wrong but that it was so plainly wrong it could not have possibly been the employer's real reason. *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1109 (3d Cir. 1997). Here, Defendants conducted a legitimate investigation into Plaintiff's participation in coupon fraud. The investigation yielded uncontroverted evidence that Plaintiff's employee card had been used in transactions during which coupons had been used more than once, among other findings. Defendants based their decision to terminate Plaintiff on these findings. Even if their decision was wrong, mistaken, or hastily made, they had a good faith basis for making it.

In addition, whether or not Plaintiff was terminated for just cause was the central question at issue during the arbitration. In that proceeding, the arbitrator concluded that Plaintiff's termination was for just cause. Specifically, the arbitrator found that there was "nothing in this record indicating that the Employer's investigation was tainted or unfair in any material respect or that his treatment of [Plaintiff] was discriminatory or selective." New Jersey courts have held that an arbitrator's decision that a party was discharged for

6

just cause weighs against finding that a proffered legitimate reason was mere pretext. *Mersmann v. Continental Airlines, Inc*., 2006 WL 507842, *4 (N.J. Super. App. Div.). With nothing in the record to suggest that Defendants' proffered legitimate reason for the employment decision was pretext, these claims must be dismissed as well.

### F.    Plaintiff's Argument that the Arbitration Decision Should be Vacated

District courts give tremendous discretion to an arbitrator's decision in a labor dispute, in large part because the decision to use arbitration for dispute resolution was made in advance by the parties when they entered into heavily negotiated collective bargaining agreements.  *Citgo Asphalt Refining Co. v. Paper, Allied-Indus., Chem. and Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 815 (3d Cir. 2004).   To give district courts full blown powers of judicial review would thus be substituting the courts' views for the bargained-upon views of the arbitrator.  *Id.*   Therefore, for a court to deny enforcement of an award, there must be absolutely no record support whatsoever.  *United Food & Commercial Workers Union, Local 464A v. Foodtown, Inc*., 2006 WL 932061, *2 (D.N.J.).

Here, the arbitrator had ample evidence to support its decision, namely the documentary evidence of the register transactions.    The arbitrator also explored whether Plaintiff had actually requested a union representative at the interview and the circumstances under which his statement came to be written.   The arbitrator found that Plaintiff was not credible.   Moreover, Plaintiff has provided no evidence at all supporting vacatur of the arbitration decision.    Therefore, Plaintiff cannot meet his burden for vacatur and this claim fails as well.

### III.    CONCLUSION

For the reasons stated above, the Court finds that there are no genuinely disputed material facts that would preclude entry of summary judgment in favor of Defendants. Therefore, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's Amended Complaint is **DISMISSED**.

          /s/ William J. Martini          
**WILLIAM J. MARTINI, U.S.D.J.**

7